IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| MICHAEL COLCLASURE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-14-388-STE |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed the administrative record (hereinafter TR. ____). Both parties to the proceedings have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of judgment. Upon review of the pleadings, the record, and the parties' briefs, it is the opinion of this court that the Commissioner's decision must be **AFFIRMED**.

### I. Procedural Background

Plaintiff's applications for benefits were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 18-27). The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision became the final decision of the Commissioner. This judicial appeal followed.

## II. The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since November 17, 2010, the alleged disability onset date. (TR. 20). At step two, the ALJ determined Plaintiff has the following severe impairments: history of back pain, mild to moderate depression, generalized anxiety, and panic disorder with agoraphobia. (TR. 20). At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 21).

At step four, the ALJ found Plaintiff could not perform any of his past relevant work. (TR. 25). The ALJ further found Plaintiff has the residual functional capacity (RFC) to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8 hour workday; and sit for about 6 hours in an 8 hour workday. (TR. 22). Additionally, Plaintiff is limited to simple, repetitive tasks, can relate to coworkers and supervisors only superficially and cannot work with the public. (TR. 22). At step five, the ALJ found there are jobs that exist in significant numbers in the national economy Plaintiff can perform. (TR. 26). Accordingly, Plaintiff was found to be not disabled from the alleged onset date through the date of the ALJ's decision. (TR. 27).

### III. Issues Presented

Plaintiff raises two primary issues on appeal. First, Plaintiff contends the ALJ erred in step two of the sequential evaluation process by failing to properly consider all of his impairments. (ECF No. 13:13-15). Second, Plaintiff argues the ALJ erred in determining his Residual Functional Capacity. (ECF No. 13:15-18).

### IV. Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V. Analysis

#### A. Step Two Determination

In connection with his first claim on appeal, Plaintiff argues the administrative law judge erroneously failed at step two to include his tremors as severe impairments and his headaches as a severe or nonsevere impairment. (ECF No. 13:14-15). Explaining that his burden to demonstrate an impairment is severe is *de minimus*, he points to various entries in his medical records and/or testimony which allegedly support the existence of his tremors and headaches.

However, the ALJ found Plaintiff has at least one severe impairment, and that "was all the ALJ was required to do in that regard." *Oldham v. Astrue*, 509 F.3d 1254, 1256–1257 (10th Cir. 2007). That is, "once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Barrett v. Astrue*, 340 F. App'x 481, 484 (10th Cir. 2009) (quoting 20 C.F.R. § 404.1523). Consequently, the undersigned "can easily dispose of" Plaintiff's step-two challenges. *Oldham*, 509 F.3d at 1256; *see also Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as 'severe' at step two does not constitute reversible error...."); *Jordan v. Astrue*, No. CIV–08–611–R, 2009 WL 1060417, at *1 (W.D. Okla. April 20, 2009) ("[B]ecause the ALJ found at step two that Plaintiff had severe impairments …, it is unnecessary to decide whether the ALJ should have found that Plaintiff had a severe medically determinable [mental] impairment at step two because any error in that regard would be harmless.").

## B. RFC Determination

### 1. Mr. Nelson's Opinion

Plaintiff argues that the ALJ erred by giving Matt Nelson, a counselor's, Mental Residual Functional Capacity Assessment ("MRFCA") no weight. (ECF No. 13:16). In the Assessment, Mr. Nelson indicated Plaintiff was not significantly limited in six functional

categories, moderately limited in three, markedly limited in ten and did not show any limitation in one. (TR. 428-30). In his decision, the ALJ explained that he did not give Mr. Nelson's opinion any weight because Mr. Nelson is not an acceptable medical source and the record does not support a counselor/patient relationship between Mr. Nelson and Plaintiff. Plaintiff contends that if the ALJ was unsure about their medical relationship, he had a duty to contact Mr. Nelson to establish the same. (ECF No. 13:16-17) (citing 20 C.F.R. § 416.912(e)).

The ALJ is correct that Mr. Nelson, as a counselor, does not qualify as a "medical source." *See* 20 C.F.R. § 404.1513(a); *see also* SSR 06-3p, 2006 WL 2329939, at *1. However, the Court cannot ignore that the Social Security Administration has acknowledged that an increasing number of claimants are receiving treatment from medical sources that are not considered to be "acceptable medical sources" under its rules. The agency has noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, which are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, at *3.

5

In spite of the fact that Mr. Nelson is not an "acceptable medical source," the ALJ considered Mr. Nelson's opinion and explained that although Mr. Nelson indicated in his Assessment that Plaintiff was "markedly limited" in some areas, there were no medical records from Mr. Nelson to support this conclusion. (TR. 25). A review of the record supports the ALJ's evaluation. Mr. Nelson indicated in his Assessment that Plaintiff was "markedly limited" in ten of twenty categories. (TR. 428-29). As he pointed out, there is very little in the record to establish a medical relationship between Plaintiff and Mr. Nelson.

Plaintiff states that in November 2011, a Treatment Plan was prepared for Plaintiff, recommending five hours of counseling per month, that was signed by both Mr. Nelson and him. (TR. 622). However, the Treatment Plan, while designating Mr. Nelson as the responsible physician, was signed by a treatment team consisting of ten different people. (TR. 622). Additionally, although the Treatment Plan includes a notation that Plaintiff prefers to work with Matt, a/k/a Mr. Nelson, there is nothing else in the record to indicate a medical relationship between the two. (TR. 623).

Plaintiff also contends the record supports Mr. Nelson's MRFCA and therefore, the ALJ should have given it more weight. Specifically, Plaintiff points to his treatment records from Associated Therapeutic Services, Inc. shows a Global Assessment Functioning ("GAF") score of 50. (ECF No. 13:17; TR. 595, 597). GAF is a scale utilized by clinicians to reflect overall level of functioning. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 4th ed., Text Revision, 2000)

(DSM–IV–TR). The Tenth Circuit has noted that a "GAF score of 41–50 indicates '[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning.'" *Cainglit v. Barnhart,* 85 F. App'x 71, 75 (10th Cir. 2003) (quoting DSM–IV–TR at 32). However, a GAF score without narrative explanation does not establish the existence of an impairment seriously interfering with a claimant's ability to work. *Id.* (citing *Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

GAF scores "must be considered with the rest of the record," and such scores alone do not establish inability to work. *Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011); *see also Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir. 2007) ("A low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (noting that a claimant's impairment reflected in a low GAF score "might lie solely within the social, rather than the occupational sphere"); *Camp v. Barnhart*, No. 03–7132, 2004 WL 1465777, at *1 (10th Cir. June 30, 2004) (a GAF score of 50 "without evidence that it impaired [claimant's] ability to work, does not establish an impairment."); *White v. Astrue*, No. CIV–09–472–M, 2010 WL 56151, at *5 n.6 (W.D. Okla. Jan. 6, 2010) ("[A] GAF assessment cannot establish an impairment absent evidence that the score was

related to a claimant's ability to work as compared to some other factor or factors in the claimant's life.").

Plaintiff does not direct the Court to any statement by any clinician that the GAF assessment was related to Plaintiff's ability to work as compared to some other factor or factors in his life. Indeed, the last GAF score Mr. Nelson assigned to Plaintiff was 51. (TR. 615, 626). Thus, standing alone, Plaintiff's one time, pre-therapy GAF rating of 50 does not mandate a conclusion that the ALJ erred by failing to give weight to Plaintiff's score.

### 2. Tremors

Plaintiff argues that the ALJ erred by failing to include in the RFC formulation any "handling, fingering, grasping, etc." restrictions related to alleged tremors in his left dominant hand. (EFC No. 13:17). The problem with this argument, however, is that the record does not support a functional limitation in Plaintiff's left hand. The ALJ considered Plaintiff's tremors but found that they were not severe. (TR. 20). In his discussion of Plaintiff's tremors and related medical records, the ALJ noted that Plaintiff had previously indicated he can stop the tremors on demand. (TR. 25). Indeed, Plaintiff reported this ability in 2010 and in 2011. (TR. 240, 355). Further, it does not appear in the record that any physician or consultant has indicated these tremors affect Plaintiff's ability to use his left hand. Finally, Plaintiff admitted that the tremors pre-date his alleged disability. (TR. 315).

The ALJ is not required to account for a limitation in his RFC formulation that is belied by the record. *Adams v. Colvin*, 553 F. App'x 811, 814 (10th Cir. 2014) (citing *Qualls v. Patel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (holding ALJ, in making RFC assessment, did not err in excluding claimant's inability to perform repetitive hand motions, where record contained no evidence of any such limitation)). *See also Pace v. Barnhart*, 74 F. App'x 877, 879 (10th Cir. 2003) ("[A]lthough [the plaintiff] specifically asserts the ALJ failed to consider [his] weakened grip, when the ALJ considered all [the plaintiff's] impairments, there is no evidence in the record supporting [] claim that he has trouble with his grip."). The Court concludes that there is substantial evidence in the record supporting the ALJ's omission of left hand limitations in Plaintiff's RFC formulation.

### 3. MRFCA, February 2011

Plaintiff's final argument is based upon the MRFCA dated February 2011. (ECF No. 13:17-18). A state agency psychologist, Dr. B. Lee Hudson, completed Section I of a Mental Residual Functional Capacity Assessment ("MRCA") form and checked a box indicating that Plaintiff has moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, as well as the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (TR. 317-18). In his narrative in Section III, Dr. Hudson explained in relevant part that:

> … [Attention/concentration/memory] intact at mental CE where no panic or extreme anxiety was presented. Claimant may have discrete episodes of moderate limitation in ability to sustain [attention/concentration] during panic episodes. Pace and ability to maintain consistent schedule may be moderately limited by anxiety symptoms.
>
> … Claimant may have moderate limitation in ability to effectively interact with the general public and may have moderate limitation in ability to consistently get along with co-workers.
>
> No evidence of significant adaptation limitation.
>
> Totality of evidence revealed that [Claimant's] mental [symptoms] are not of sufficient severity to interfere with ability to perform SRT's with adequate CPP over normal workday/week within physical limits.

(TR. 319).

The ALJ incorporated Dr. Hudson's Section III assessment into Plaintiff's RFC, finding that Plaintiff is "able to perform simple, repetitive tasks," "can relate to coworkers and supervisors only superficially," and "cannot work with the public." (TR. 22). Plaintiff alleges error, however, because the ALJ did not specifically discuss the psychologist's check-box finding in Section I that Plaintiff has moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, as well as ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The Court disagrees because the Tenth Circuit has previously held that an ALJ's

failure to discuss a Section I finding is not reversible error. *See Sullivan v. Colvin*, No. 12–5147, 2013 WL 950970, at *3 (10th Cir. Mar. 13, 2013).

In *Sullivan*, the state agency doctor had also checked a box indicating that the plaintiff was moderately limited in the ability to maintain a schedule, regular attendance and complete a normal workday. *Id.* On appeal, the plaintiff alleged that the ALJ committed legal error in failing to specifically discuss that limitation. *Id.* The Tenth Circuit disagreed, concluding that:

> According to the guidance in the Social Security Administration's Program Operations Manual System (POMS), "Section I of the Mental RFC Form is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment, whereas Section III—Functional Capacity Assessment, is for recording the mental RFC determination." "*It is in Section III that the actual mental RFC assessment is recorded, explaining the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.*" *Id.* Thus, as the Magistrate Judge ruled, the ALJ accepted the state agency's ultimate opinion that, with all of the moderate limitations, Ms. Sullivan could perform unskilled work.

*Id.* (emphasis provided, internal brackets and citations omitted).

Although unpublished, *Sullivan* is factually almost identical to the present case and its holding is in accordance with other courts who have examined the issue. *See, e.g., Smith v. Comm'r. of Soc. Sec.*, 631 F.3d 632, 636 (3rd Cir. 2010) (holding that the claimant "cannot rely on the worksheet component of the [MRFCA]" and collecting cases in support); *Israel v. Astrue*, 494 F. App'x 794, 797 & n.1 (9th Cir. 2012) (noting

that "[the claimant] cites [no authority] that requires the ALJ to separately weigh and consider each checked box in Section I of the MRFCA" and citing the SSA's Program Operations Manual System); *Anderton v. Colvin*, No. 2:11–CV–00894–DN–DBP, 2013 WL 1284350, at *8 (D. Utah Mar. 4, 2013) (rejecting the plaintiffs allegation that the ALJ was required to consider and discuss findings in Section I of the MRFCA form because Section III's narrative is the actual assessment); *Sitzman v. Astrue*, No. 7:11CV5006, 2012 WL 1437281, at *8 (D. Neb. Apr. 25, 2012) ("'Because the actual assessment is contained in Section III, courts have consistently held that it is not error for an ALJ to omit restrictions identified in Section I in his RFC analysis.'" (citing *Kane v. Astrue*, No. 1:10CV1874, 2011 WL 3353866, at *3 (N.D. Ohio Aug. 3, 2011) (collecting cases in support)). Accordingly, the Court finds no reversible error in the ALJ's failure to address Dr. Hudson's check-box finding in Section I of the MRFCA form.

## CONCLUSION

The decision of the Commissioner is **AFFIRMED**. Judgment will be entered accordingly.

**ENTERED** on August 14, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE